IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: WELLBUTRIN SR ANTITRUST LITIGATION | : : | CIVIL ACTION NO. 04-5525 |

---

| | | |
|---|---|---|
| MEDICAL MUTUAL OF OHIO, INC. | : | CIVIL ACTION NO. 05-396 |
| v. | : | |
| GLAXOSMITHKLINE PLC, et al. | : | |

**M E M O R A N D U M**

Stengel, J.                                                                                                                            August 31, 2010

GlaxoSmithKline PLC, et al (GSK) has filed a renewed motion for summary judgment on all claims, presenting an argument that was absent from its original motions for summary judgment.[1] GSK asserts that because this court found that GSK had a reasonable basis for filing a claim alleging infringement of the '994 patent, and the '994 patent infringement claim and the '798 patent infringement claim were *both* included in *one* lawsuit, I must find as a matter of law that GSK had a reasonable basis for filing that lawsuit. In other words, GSK argues that the assertion of a "non-sham" claim along with

---

[1] On March 31, 2010, this Court issued two orders: one granting GSK's motion for summary judgment on all claims relating to the '994 patent, and one denying GSK's motion for summary judgment on all claims. The latter largely concerned GSK's patent claims based on the '798 patent. In essence, I found that GSK had probable cause to file suit alleging infringement of the '994 patent, and that a genuine issue of material fact precludes a finding that it also had probable cause to file suit alleging infringement of the '798 patent. The facts relevant to those motions are set forth in my opinions resolving them.

a "sham" claim[2] together in one lawsuit, mandates a finding that the entire lawsuit was not objectively baseless.

**I.     FACTS**[3]

In July, 2000, the generic drug manufacturer Eon submitted an abbreviated new drug application ("ANDA") for generic Wellbutrin SR. Direct Purchaser Amended Class Action Complaint, ¶ 71. Eon's ANDA included a Paragraph IV certification asserting that it had not infringed the '798 patent. Id. On November 29, 2000, GSK filed suit against Eon in the Southern District of New York for infringement of the '798 and '994 patents, triggering a 30 month stay during which Eon could not market its generic version of Wellbutrin SR. Id. at ¶¶ 72-73. On January 24, 2002, Eon received tentative approval for generic Wellbutrin SR from the FDA. Id. at ¶ 74. Tentative approval means essentially that the FDA would have granted approval for marketing of the generic version *but for* the 30 month stay. Id. at ¶ 75.

On August 13, 2002, the Southern District of New York issued two opinions concerning the Eon infringement suit. In one, it denied Eon's motion for summary

---

[2] By calling the '994 patent a non-sham claim, I rely on my finding on summary judgment that plaintiffs did not present clear and convincing evidence that GSK's '994 patent infringement claim was objectively baseless. In calling the '798 patent infringement claim a sham claim, I rely on my finding that plaintiffs presented what a jury could find to be clear and convincing evidence that GSK's infringement suit on the '798 patent was a sham.

[3] This is a truncated version of the relevant facts. For a full explanation of the history of GSK's patent infringement lawsuits, see this court's opinions resolving the motions for summary judgment.

judgment on the '798 patent on the ground that a GSK had raised a genuine issue of fact whether HPC was foreseeable as an equivalent to HPMC at the time the '798 patent's claims were amended. See Glaxo Wellcome, Inc. v. Eon Labs Mfg., Inc., No. 00 Civ. 9089 LMM, 2002 WL 1874831 (S.D.N.Y. Aug. 13, 2002). In the second, it granted Eon's motion for summary judgment as to the '994 patent, finding that Eon proved by clear and convincing evidence that the specification for the '994 patent was invalid because it was not enabling under 35 U.S.C. § 112 ¶ 1. See Glaxo Wellcome, Inc. v. Eon Labs Mfg., Inc., No. 00 Civ. 9089 LMM, 2002 WL 1874830 (S.D.N.Y. Aug. 13, 2002).

After the 30 month stay expired in November, 2003, Eon received FDA approval for its generic version of Wellbutrin SR. Complaint ¶ 116. However, GSK was granted a temporary restraining order and preliminary injunction preventing Eon from marketing its drug before trial on the '798 claim. Id. at ¶ 117-118. After the Federal Circuit stayed the injunction in January, 2004, Eon finally began marketing its product. Id. at ¶ 120.

As described above, GSK's infringement suit against Eon covered both the '798 and '994 patents. GSK now claims this court's holding that there was a reasonable basis for GSK's filing of the '994 patent infringement claim means that GSK's *lawsuit* against Eon could have succeeded, and that under Prof'l Real Estate Investors, Inc., et al v. Columbia Pictures Indus., Inc., 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) ("PRE"), the controlling question is whether a "lawsuit" has a realistic chance of success. Renewed Mot. For Summary J., 2. In support of this claim, GSK relies on language in

PRE describing the question at issue as whether "litigation," or "a lawsuit," is objectively baseless. It also relies on language in this Court's memorandum that whether the litigation was objectively baseless depends on the law and facts as they stood at the time the litigation was filed.

Alternatively, GSK seeks a ruling that plaintiffs cannot show, as a matter of law, that GSK caused any antitrust injury prior to August 13, 2002, since this is the date on which Eon's motion for summary judgment that the '994 patent was invalid was granted. GSK essentially reasons that, since I have ruled that its infringement claim based on the '994 patent had a reasonable chance of success and was therefore not objectively baseless, any damages incurred during the time it was still pending cannot be part of any ultimate recovery here.

The plaintiffs respond that "GSK's sham litigation on the '798 patent both (i) delayed resolution of the '994 patent claim and (ii) kept generic competition off the market *solely by virtue of the sham claim itself* for over a year after the '994 claim was dismissed." Resp. To Renewed Mot. For Summary J., 1 (emphasis in original). In response to GSK's alternative argument, it claims that I should not limit the damages period to one beginning after the '994 patent claim was dismissed because "there is a reasonable jury argument that GSK's pursuit of the '798 claim delayed summary judgment on the '994 claim by five months." Id. at 9.

## II. DISCUSSION

### A. GSK Claims Summary Judgment In Its Favor On the '994 Patent Sham Litigation Claim Mandates Dismissal of Plaintiffs' Entire Suit

In support of its argument, GSK cites few cases. In the first, Dentsply Intern. Inc. v. New Tech. Co., No. 96-272, 1996 WL 756766 (D.Del. Dec. 19, 1996), the plaintiffs filed suits alleging patent infringement against defendants, who in turn filed sham litigation antitrust counterclaims. The court, in deciding a motion to bifurcate trial on the patent infringement claims and the sham litigation counterclaims, observed that, "plaintiffs are correct in their assertion that if they can convince a jury that defendants have infringed their patent, an important aspect of the defendants' antitrust counterclaim—their allegations of 'sham' litigation—will be mooted." Id. at *2. It then stated, "[i]n fact, courts have indicated that litigation will not be considered a "sham" so long as at least one claim in the lawsuit has objective merit." Id. For this proposition, the court cited two cases: (1) PRE, for its statement that a "*lawsuit* must be objectively baseless," id. (emphasis added in Dentsply), and (2) Eden Hannon & Co. v. Sumitomo Trust & Banking Co., 914 F.2d 556, 565 (4th Cir. 1990). It granted the motion to bifurcate trial on the patent infringement claim and the sham litigation counterclaim. Id. at *5.

Dentsply is only somewhat helpful in deciding the instant motion and is distinguishable in three important respects. First, the motion at issue in Dentsply, to bifurcate trial on the claims and counterclaims, arose prior to discovery and more

importantly, was not case dispositive. Additionally, the Dentsply court was faced with a different factual scenario than the one before us, in that the plaintiff asserted that defendant simultaneously infringed two patents, and a successful claim on either one would be sufficient to stop the defendant from marketing its products *and* from pursuing its sham litigation counterclaim. Here, it cannot be disputed that GSK's infringement claim on the '798 patent was solely responsible for plaintiffs' inability to market generic Wellbutrin SR *after* the '994 patent claim was dismissed.

Finally, neither case relied on by the Dentsply court for its statement that "litigation will not be considered a 'sham' so long as at least one claim in the lawsuit has objective merit," strongly supports that assertion. The first was PRE, and as pointed out by the plaintiffs and at least one other court, I should be careful to ascribe too much importance to the repeated use of the terms "lawsuit" and "litigation" in PRE, since there, defendant's antitrust counterclaims alleged that plaintiff's *entire* copyright claim was a sham. 508 U.S. at 52; see Resp. To Renewed Mot. For Summary J., 5; Intel Corp. v. Via Technologies, Inc., No. 99-03062, 2001 WL 777085 at *5 (N.D.Cal. Mar. 20, 2001) ("In fairness . . . the Supreme Court was addressing a different issue, namely the objective (as opposed to subjective) component of the sham test and its use of the phrase 'the lawsuit' was not directed at the instant issue [of 'a single lawsuit with multiple claims']."). In other words, the PRE court was simply not faced with the situation confronting me, where plaintiffs accused of filing sham litigation potentially asserted one sham and one non-

sham claim. The other case relied on by the court in Dentsply, Eden Hannon, did not actually hold that a lawsuit is saved as long as one claim asserted within that suit is not objectively baseless. In Eden Hannon, the Fourth Court reviewed a District Court's finding that defendant had breached a non-circumvention and non-disclosure agreement with the plaintiff, and its subsequent dismissal of the defendant's antitrust sham litigation counterclaims. 914 F.2d at 557-58. It affirmed the District Court's ruling, reasoning that "[u]nder the Noerr-Pennington doctrine, the filing of a lawsuit (or the seeking of other government action) can only violate antitrust laws when it is a 'sham.' Since [the plaintiff] has succeeded in its breach of contract claim and won a constructive trust and an injunction, this suit is hardly a sham." 914 F.2d at 564-565. The District Court below had not dismissed the sham litigation counterclaims asserted by the defendants until the close of the plaintiff's evidence at trial, doing so because it was "satisfied that the case was not a sham." Id. at 557. Trial then continued, and the plaintiff was successful on its breach of contract claim. Id. Therefore, at the time the case came before the Fourth Circuit, it had been determined that the plaintiff's lawsuit was successful, not just objectively reasonable. I have ruled as a matter of law that GSK's '994 patent infringement claim was objectively reasonable. It bears repeating that GSK's *lawsuit* was never successful. GSK lost summary judgment on the '994 patent infringement claim, and though the Southern District of New York denied Eon's motion for summary judgment on the '798 claim, GSK eventually settled its '798 infringement claim against

Eon.

GSK also cites Meridian Project Sys. v. Hardin Constr. Co., 404 F. Supp. 2d 1214 (E.D.Cal. 2005). There, plaintiffs filed an amended complaint against defendants asserting eight claims, including ones for breach of contract, unfair competition, fraud, interference with contractual relations, and copyright infringement. 404 F. Supp. 2d at 1217. Defendant filed four counterclaims, three of which alleged unfair competition, attempted monopolization, and interference with prospective economic advantage. Id. at 1218. Plaintiffs argued the counterclaims were barred under Noerr-Pennington because defendants alleged that only *one* of the plaintiff's claims was objectively baseless. Id. at 1221-22. The court agreed, finding that:

> [T]o fall within the sham exception, Meridian's filing of the lawsuit must be objectively baseless. Meridian's complaint contains seven other claims, which CMIC does not allege are baseless. Because CMIC makes no allegation that these seven claims lack merit, the court cannot say Meridian's complaint as a whole is objectively baseless. Thus, CMIC's allegation that a single claim is objectively baseless does not bring Meridian's filing of the entire complaint within the sham exception.

Id. at 1221-22 (internal citations omitted).

Plaintiffs claim Meridian is distinguishable because is does not involve "the question of continued prosecution of a sham claim after other claims had been dismissed, which is the circumstance presented here." Resp. To Renewed Mot. For Summary J., 7.

In support of their argument, plaintiffs cite MCI Commc'ns v. Am. Tel & Tel Co., 708 F.2d 1081, 1154-55 (7th Cir. 1983), a case decided before the decision in PRE was

issued and holding that a single baseless claim within a complaint can serve as grounds for a sham litigation claim. GSK claims MCI is inapplicable because it predates PRE and because it concerns administrative claims, and not lawsuits. While this case does predate PRE, it is not as if PRE created a sham litigation claim where there was none before, or that it drastically changed the essence of such a claim. Rather, PRE clarified that the first prong of a sham litigation claim requires the plaintiff to show that the challenged lawsuit was not objectively reasonable. 508 U.S. at 57. Whether one sham claim within a lawsuit can constitute grounds for a sham litigation action was not addressed in PRE. Therefore, I believe I may consider MCI persuasive authority.

Plaintiffs also cite Novelty, Inc. v. Mountain View Mktg., Inc., No. 07-1229, 2010 WL 1325436 (S.D. Ind., Mar. 30, 2010). There, plaintiffs filed a complaint against defendant for copyright infringement, claiming that defendant had infringed three of its copyrighted designs. Id. at *1. Defendant counterclaimed, asserting that the plaintiff had brought objectively unreasonable claims that constituted sham litigation. Id. Although it granted plaintiff's motion to bifurcate because it promoted judicial economy, the Court separately addressed plaintiff's argument that "so long as it prevails on at least one claim, it cannot be held liable for asserting any 'sham' claims." Id. at *2, n.2. Citing MCI, it noted that "a single claim, lawsuit or petition can be 'sham litigation' actionable under the antitrust laws" and observed that "[s]ham litigation therefore requires a claim-by-claim analysis." Id. Obviously, the Novelty court was not concerned that PRE in any way

abrogated this part of the MCI decision.

Finally, plaintiffs cite Intel Corp. v. Via Technologies, Inc., 2001 WL 777085, where the court was faced with a motion for judgment on the pleadings after the plaintiff sued the defendant for infringement of four separate patents. Specifically, the plaintiff argued that it was entitled to judgment in its favor on the defendant's sham litigation counterclaims because its complaint and/or amended complaint contained claims that were non-shams. Id. at *5. The court rejected this argument, reasoning (1) that PRE's "litigation" language was not directed to and was therefore inapplicable to the issue of sham and non-sham claims asserted in the same lawsuit; and (2) that Eden Hannon did not purport to address the "'mixed' claims scenario" of "a lawsuit with multiple claims, some of which are baseless." Id. Ultimately, the court did not resolve the issue at the pleadings stage and instead deferred judgment, observing that "[d]iscovery may reveal that the incremental effects of the supposed sham components were negligible or may show that they dominated the original complaint." Id. at *6. I take this to mean that the Court would allow discovery to reveal what role the alleged sham claims had in the underlying litigation as a whole.

In this case, I have already reached a conclusion on that subject, finding that of the two infringement claims asserted against Eon, there is a genuine issue of fact concerning one, the '798 patent claim. That claim is the one that continued longer in the litigation and which ultimately is alleged by the plaintiffs to have caused antitrust injury.

GSK argues, repeatedly, that this court is constrained by the use of language in the summary judgment opinion that the relevant issue is whether the facts and the law as they stood when GSK filed suit against Eon would have given GSK a reasonable expectation of success. GSK uses this language in arguing that, because I have already found that GSK had a reasonable expectation of success as to the '994 patent infringement claim *at the time of filing the lawsuit*, I must now find that any lack of a reasonable expectation of success on the '798 patent has no bearing on the plaintiffs' sham litigation claim. I note that GSK did not raise the argument that a finding in its favor on the '994 patent sham litigation claim would be case dispositive until after this court issued its rulings. GSK is now ascribing meaning to my language that I could not possibly have had at the time, because I was unaware GSK would raise this argument. While I find GSK's argument creative, I believe it is a misconstruction of the summary judgment opinions. My language about the facts and the law as they stood at the time GSK filed suit was directed at each patent claim independently. I issued two *separate* judgments on the '994 and '798 patent infringement claims, as did the court in Eon. I conducted two *separate* analyses of whether GSK could have reasonably expected success on each patent claim, looking at the relevant law and facts surrounding each patent claim, and came to two *separate* conclusions. Arguing that my language in any way indicated that success on one claim would end the plaintiffs' suit ignores the circumstances surrounding issuance of the opinion.

That said, GSK raises a novel argument, and as far as I can tell, the only appellate courts to have addressed the "mixed claim" scenario are the Fourth, in Eden Hannon, and the Seventh, in MCI. Neither is factually analogous. I agree with plaintiffs that reading PRE to hold that an entire lawsuit must be a sham in order to state a sham litigation claim, even when that lawsuit contains both sham and non-sham claims, ignores the relevant facts of that decision and ascribes to it a meaning the Court may not have had. Dismissing plaintiffs' claims at this point would ignore the reality that the '798 claim, in and of itself, was sufficient to cause antitrust damage because it resulted in the continuation of GSK's 30 month patent protection stay *after* the '994 patent claim was dismissed. If plaintiffs' prove their sham litigation claim based on the '798 patent infringement suit, I do not believe they will then be unable to show antitrust damage. GSK's argument concerning my own language in the summary judgment opinions is also unavailing. Nothing about my treatment of this case has reflected anything less than separate consideration of each patent claim.

### B. GSK Argues Alternatively That the Damages Period Should Not Include Any Time Prior to August 13, 2002, The Date the Eon Court Dismissed the '994 Patent Claim

GSK presents little in support of this argument. First, it cites Callahan v. AEV, Inc., 182 F.3d 237 (3d Cir. 1999). In Callahan, plaintiffs claimed defendant and a beer wholesaler engaged in price discrimination and price-fixing and conspired to restrain

trade in the Pittsburgh beer market. The issue before the Third Circuit was "whether the plaintiffs have proffered sufficient evidence to raise a genuine issue of material fact as to whether the defendants' alleged antitrust violations caused harm to the plaintiffs." 182 F.3d at 250. The plaintiffs had presented testimony from former customers and from an expert who explained that the plaintiffs' loss of income was due to defendant's actions. GSK cites this case for the general rule that "a plaintiff must prove a causal connection between [the antitrust violation] and actual damage suffered." Id. (quoting Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1273 (3d Cir.1995)).

None of the facts of Callahan assist me in analyzing the instant issue. I note, though, that in Stelwagon, where the Third Circuit stated that there must be a causal connection between antitrust activity and the actual damage suffered, it quoted the Supreme Court's ruling that:

> "[A] Plaintiff must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation of or anticompetitive acts made possible by the violation. It should, in short, be 'the type of loss that the claimed violations . . . would be likely to cause.'"

Stelwagon, 63 F.3d at 1273, n. 14 (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 125, 89 S.Ct. 1562, 1577-78, 23 L.Ed.2d 129 (1969)). I believe the language in Stelwagon actually invites us to more broadly construe "antitrust injury" than GSK argues we should. Applying this language to this case supports the rejection of GSK's initial argument, because the antitrust injury here—being forced to pay

monopolized prices for Wellbutrin SR—was allegedly caused by the filing of sham litigation. Although one claim was dismissed, the antitrust injury allegedly suffered was caused in and of itself by the patent infringement claim that survived summary judgment and was eventually dismissed.

GSK also cites In re Terazosin Hydrochloride Antitrust Litig., 335 F. Supp. 2d 1336 (S.D. Fla. 2004), another pharmaceutical sham litigation case. Abbot Pharmaceuticals filed suits against multiple generic manufacturers for infringement of multiple patents covering its blood pressure drug, Hytrin. The facts of Terazosin are somewhat different than the facts here. In relevant part, Abbot had filed an action against a generic manufacturer, Novapharm, on one patent, which triggered the 30-month stay. The court found that that patent infringement claim could have caused the antitrust injury alleged. It dismissed Novapharm's claims because Abbot's suit against it on *another* patent infringement claim, which was not objectively baseless, would have triggered the 30 month stay as well and therefore would also have prohibited Novapharm's entry onto the market.

The facts are very different here, since GSK filed one lawsuit alleging infringement of two patents, not two different lawsuits that each would have independently caused the antitrust injury alleged. In Terazosin, the court dismissed the antitrust claims because a claim found not to be objectively baseless could have alone caused the antitrust injury. Here, the claim we found to be arguably objectively baseless

-14-

is the claim which alone caused antitrust injury.

The plaintiffs counter that a review of the Eon court's docket reveals that briefing on the '994 patent claim was completed long before briefing on the '798 claim, and argue that, as a result, there is a viable argument that the '798 claim actually delayed resolution of the '994 patent claim. I will deny GSK's motion to limit the damages period, because I believe plaintiffs are correct that this is an issue I must submit to the jury.

## III. CONCLUSION

For the reasons set forth above, I will deny GSK's renewed motion for summary judgment on all claims.