## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
|  | : |  |
| In re: **WELLBUTRIN SR** | : | **CIVIL ACTION NO. 04-5525** |
| **ANTITRUST LITIGATION** | : |  |

### PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
### OF DIRECT PURCHASER CLASS SETTLEMENT

SAJ Distributors, Inc. and Stephen L. LaFrance Holdings, Inc. (together, "SAJ") and

Meijer, Inc. and Meijer Distribution, Inc. (together, "Meijer") (collectively, "Plaintiffs") move,

on behalf of themselves and the certified class of direct purchasers ("the class"), for an order (1)

preliminarily approving a settlement with Defendant SmithKline Beecham Corporation d/b/a

GlaxoSmithKline; (2) approving the forms of notice and directing notice to the Class; (3)

approving the proposed claim form and plan of distribution; (4) approving the escrow agent; (5)

authorizing the previously appointed class administrator, Class Action Administration, Inc., to

disseminate notice and receive and process class member claims; and (6) setting a schedule for

completing the settlement approval process.

The reasons in support of this motion are set forth in Plaintiffs' accompanying

memorandum of law.

Dated: August 17, 2011     Respectfully submitted,

             */s/ Joseph F. Roda*
             Joseph F. Roda

             */s/ Dianne M. Nast*
             Dianne M. Nast

             Jennifer S. Snyder
             RODANAST, PC
             801 Estelle Drive
             Lancaster, Pennsylvania 17601
             (717) 892-3000
             *Lead Counsel for Direct Purchaser*
             *Class Plaintiffs*

Michael L. Roberts
ROBERTS LAW FIRM, PA
P.O. Box 241790
20 Rahling Circle
Little Rock, Arkansas 72223
(501) 821-5575

Arnold Levin
Fredrick S. Longer
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
(215) 592-1500

J. Douglas Richards
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street
14th Floor
New York, NY 10005
(212) 838-7797

Paul E. Slater
SPERLING & SLATER, PC
55 W. Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 641-3200

Daniel E. Gustafson
Karla M. Gluek
GUSTAFSON GLUEK PLLC
650 Northstar East,
608 2nd Avenue S
Minneapolis, MN 55402
(612) 333-8844

Linda P. Nussbaum
Shelly Friedland
John D. Radice
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
(646) 722-8500

Daniel Berger
Eric L. Cramer
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
(215) 875-3026

Joseph M. Vanek
VANEK, VICKERS, & MASINI P.C.
111 S. Wacker, Suite 4050
Chicago, Illinois 60606
(312) 224-1500

*Co-Counsel for Direct Purchaser Class Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
|  | : |  |
| In re:  WELLBUTRIN SR | : | CIVIL ACTION NO. 04-5525 |
| ANTITRUST LITIGATION | : |  |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF DIRECT PURCHASER CLASS SETTLEMENT**

**INTRODUCTION**

SAJ Distributors, Inc. and Stephen L. LaFrance Holdings, Inc. (together, "SAJ") and

Meijer, Inc. and Meijer Distribution, Inc. (together, "Meijer") (collectively, "Plaintiffs"), submit

this memorandum, on behalf of themselves and the certified class of direct purchasers ("the

class"),[1] in support of their motion for preliminary approval of settlement under Federal Rule of

Civil Procedure 23(e).

This class action alleges that Defendant SmithKline Beecham Corporation d/b/a

GlaxoSmithKline ("GSK") unlawfully maintained monopoly power in the market for Wellbutrin

SR, a brand-name prescription anti-depressant, in violation of Section 2 of the Sherman Act, 15

U.S.C. § 2, causing Plaintiffs and the class to pay higher prices than they would have paid in a

competitive market.  After more than six-and-a-half years of hard-fought litigation, Plaintiffs and

GSK have reached a settlement, which is memorialized in the Settlement Agreement attached as

Exhibit 1 hereto.

The settlement is intended to resolve all claims that have been or could have been

asserted in this case, concerning the alleged suppression of generic competition for Wellbutrin

---

[1]  *See In Wellbutrin SR Antitrust Litig.,* Memorandum and Order (Doc. 258) (E.D. Pa.
May 2, 2008) certifying the following Class:  "all persons or entities in the United States,
excluding governmental entities, that purchased the 100 mg or 150 mg dosage of Wellbutrin SR
directly from GSK during the period from January 24, 2002 to June 30, 2006."

SR, for all direct purchasers of Wellbutrin SR and its generic equivalents during the period January 24, 2002 to June 30, 2006.

The settlement provides a recovery of $49 million dollars in cash, and up to $500,000 in costs of notice to the class and administration of the settlement.

The settlement is an excellent result for the class, given the risk and cost of continued litigation, trial, and potential appeals. Lead Counsel and co-counsel for the class fully support the settlement, having concluded that it is fair, reasonable, adequate and in the best interests of Plaintiffs and the class.

Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement; approve the forms of notice, plan for dissemination of notice, claim form and plan of distribution, and escrow agent; authorize the previously appointed class administrator, Class Action Administration, Inc. ("CAA"), to disseminate notice and receive and process class member claims; and set a schedule for the final approval process.

## BACKGROUND

### I.      Summary of the Wellbutrin SR Antitrust Litigation

Wellbutrin SR is the brand name for a widely-prescribed anti-depressant manufactured and marketed by GSK. Plaintiffs filed this lawsuit in 2004 as a class action alleging that GSK violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully maintaining its monopoly over Wellbutrin SR and its generic equivalents. Specifically, Plaintiffs allege that GSK filed sham litigation to delay generic drug manufacturers from bringing less expensive, generic versions of Wellbutrin SR to market. As a result, Plaintiffs claim that they paid more for Wellbutrin SR than they would have in the absence of the alleged anticompetitive conduct. GSK has denied these allegations and asserted a variety of defenses.

This case is approaching its seventh year of hard-fought litigation, and the parties reached their settlement on the verge of trial.  During the nearly seven years of this litigation:

- Plaintiffs successfully opposed GSK's motion to dismiss and attempts to obtain interlocutory appeal of that decision;

- Plaintiffs obtained certification of the class over GSK's opposition;

- the parties actively pursued formal and informal discovery, including GSK's production of more than one million pages of documents, which Plaintiffs analyzed and prepared for future use in the litigation;

- the parties collectively took and/or defended roughly thirty depositions throughout the country;

- the parties sought and obtained discovery from the third-party manufacturers of generic versions of Wellbutrin SR;

- the parties retained and consulted numerous experts to conduct preliminary evaluations, prepare reports in connection with class certification, and prepare initial and supplemental reports on liability and damages;

- the parties briefed and argued numerous discovery motions on a variety of issues, including attorney-client privilege, motions for protective orders, and motions to compel;

- GSK initially filed two motions for summary judgment, one of which Plaintiffs successfully opposed, and the other of which GSK won—and GSK then filed a renewed motion for reconsideration of its motion for summary judgment, which was argued and pending at the time of settlement;

- the parties briefed more than twenty pre-trial motions, including motions *in*

*limine*, *Daubert* motions, and a motion to bifurcate the trial*,* many of which were argued to and decided by the Court; and

- the parties prepared and exchanged pretrial materials—including witness and exhibit lists, proposed stipulations, and deposition designations and counter-designations—and filed pretrial memoranda, proposed jury instructions, and verdict slips with the Court.

## II.   Summary of the Class Action Settlement

After the Court issued its January 4, 2011 order scheduling this case for trial, and with the Court's encouragement, the parties pursued the prospect of settlement through a private, day-long mediation session held on April 1, 2011.  The parties were unsuccessful in reaching a resolution at that time and therefore continued their simultaneous preparation for trial, which was then set to begin on June 27, 2011.

After a hearing before the Court on May 25, 2011, during which the parties argued GSK's renewed motion for reconsideration of its motion for summary judgment and various pre-trial motions, the parties agreed at the Court's request to return to private mediation.  That second session, before the same mediator as the first, was then held on June 7, 2011, and during it the parties succeeded in reaching their settlement.  The settlement was memorialized that day in an Agreement in Principle, and then in the Settlement Agreement attached hereto as Exhibit 1, which was executed on August 3, 2011.

The Agreement provides for:

- a national, class-wide settlement;

- the payment by GSK of $49 million in cash (less taxes, as well as attorneys' fees and costs and class representative payments that this Court may award) to class

4

members who file timely claim forms;

- the additional payment by GSK of up to $500,000 towards the cost of notice to the class and administration of the settlement; and

- both individual written notice to each class member by first class mail and publication of summary notice in an industry journal, as well as notice posted on the internet.

In light of the risk and cost of trial and appeal that the case presented, the settlement is an excellent result that provides real benefit to the class.

## ARGUMENT

**I.      Preliminary Approval of the Settlement is Appropriate.**

Federal courts favor class action settlements. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing the "strong presumption in favor of voluntary settlement agreements" and noting that it is "especially strong" in the context of class action cases).

Approval of a class action settlement is a two-step process, the first involving preliminary approval of the settlement and its related processes (such as notice, the claim form, and the schedule for a final fairness hearing), and the second being final approval of the settlement after a fairness hearing. *See Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008); *Curiale v. Lenox Group, Inc.*, Civ. A. 07-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008). These preliminary and final procedures are summarized in the *Manual for Complex Litigation, Fourth* (2004) § 21.6 ("*Manual*"), the Federal Judicial Center publication designed to aid federal judges in the management of complex litigation.

A class action settlement warrants final approval if it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). At the preliminary approval stage, however, a court does not have to

reach a final conclusion as to the fairness of the settlement.  It only has to make a preliminary evaluation as to whether the proposed settlement is within the range of possible approval and free of obvious deficiencies or reasons to doubt its fairness.  *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); *Curiale,* 2008 WL 4899474, at *4; *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004); *Thomas v. NCO Fin. Sys., Inc.*, Civ. A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002).  If a settlement falls within the range of possible approval, preliminary approval should be granted, and notice given to class members to allow them the opportunity to learn about and comment on the proposed settlement.  *Samuel v. Equicredit Corp.*, No. Civ. A. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. May 6, 2002).

In considering whether to give preliminary approval, the appropriate considerations include those of fairness and whether:  (1) the settlement negotiations occurred at arm's length, (2) there was sufficient discovery, and (3) the proponents of the settlement are experienced in similar litigation.  *Gates*, 248 F.R.D. at 439; *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003); *Curiale*, 2008 WL 4899474, at *9.[2]

The settlement proposed in this case meets these and all related factors.

**A.      The proposed settlement and plan of distribution satisfy a preliminary evaluation of reasonableness.**

At the final approval stage, a multi-factor test (established in the seminal case of *Girsh v.*

---

[2]  These same cases also provide that where only a small fraction of the class has objected, this is an additional factor warranting preliminary approval.  *Gates*, 248 F.R.D. at 439; *Linerboard*, 292 F. Supp. 2d at 638; *Curiale,* 2008 WL 4899474, at *9.  While no objections have been received to date, the deadline for submitting objections is generally established upon preliminary approval, after notice of the settlement has been provided, consistent with the schedule that Plaintiffs propose here.  Under these circumstances, the appropriate time for considering objections (if any) would be at the final approval stage, after the deadline for submitting objections has passed.

*Jepson,* 521 F.2d 153, 157 (3d Cir. 1975)) applies to determine whether a settlement ultimately should be approved.  *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009). At the present stage, however, "the Court need not address these factors, as the standard for preliminary approval is far less demanding."  *Gates*, 248 F.R.D. at 448 n.7.  Preliminary approval is not a binding commitment to final approval, but merely a determination that the settlement has no obvious shortcomings and generally appears to be reasonable.  *Id.* at 438.

Here, the proposed settlement has no such shortcomings and appears reasonable.  It provides a cash payment of $49 million for distribution to class members, less taxes, court-approved fees and expenses, and any court-approved payments to the two plaintiff class representatives (SAJ and Meijer) for prosecuting the litigation on behalf of the class.  In addition, GSK has agreed to pay, subject to Court approval, up to $500,000 for costs of notice and administration.

Plaintiffs intend to file a motion for an award of attorneys' fees not to exceed one-third of the settlement fund and reimbursement of expenses.  Plaintiffs will also request the Court to approve payments of $25,000 each to SAJ and Meijer for their efforts in prosecuting this litigation on behalf of the class.  *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.") (citations, internal quotations omitted).

The Net Settlement Fund[3] will be distributed to class members based on their purchases of Wellbutrin SR during the class period, and thus does not grant preferential treatment to any

---

[3]  As defined in the Settlement Agreement, the Net Settlement Fund is the amount remaining in the settlement fund for distribution for approved claims after reduction for payment of taxes, attorneys' fees, any payments to the class representatives and disbursements for such costs and expenses as approved by the Court.

class member.

Overall, the settlement represents an excellent result for the class.

**B.      The settlement is the result of arm's-length negotiations.**

Whether a settlement arises from arm's-length negotiations is often the central focus of the analysis on a motion for preliminary approval.  *Mehling*, 246 F.R.D. at 472; *Curiale*, 2008 WL 4899474, at *4.  An examination of the circumstances surrounding the present settlement confirms that the negotiations here support preliminary approval.

This litigation has been hard-fought from the start, and even while the parties pursued mediation and settlement, they were each simultaneously preparing for trial.  The proposed settlement is the result of non-collusive, good faith efforts between adversaries to resolve the case before trial and ensuing appeals, and was reached only after robust negotiations encouraged by this Court and guided by an independent and skilled mediator.

This factor thus supports preliminary approval.  *See Gates,* 248 F.R.D. at 444 (granting preliminary approval to a settlement following two days of mediation where there was "nothing to indicate that the proposed settlement . . . [was] not the result of good faith, arms-length negotiations between adversaries," and the Court had no reason to doubt that the settlement involved the same "vigorous and independent lawyering" that characterized the nearly two years of litigation preceding settlement); *see also In re Greenwich Pharm. Sec. Litig.*, Civ. A. 92-3071, 1995 WL 251293, at *2 (E.D. Pa. Apr. 26, 1995) ("Because this class was certified before settlement negotiations began, the proposed settlement enjoys a presumption that it is the product of arm's-length negotiations conducted by capable counsel.").

**C.** **The settlement in this case was reached only after almost seven years of discovery and other proceedings, which further supports preliminary approval.**

This litigation was fought hard by both sides for more than six-and-a-half years, and was on the verge of trial when a settlement was ultimately reached. Before settlement, the parties:

- actively pursued discovery, including vast document discovery and dozens of depositions;

- retained and consulted experts, who conducted preliminary evaluations and prepared reports at class certification, as well as on liability and damages;

- briefed dozens of motions, including motions to dismiss, for class certification, for discovery rulings, for summary judgment, and for various pretrial rulings; and

- prepared the case for trial, including the exchange of pretrial materials and the filing of pretrial memoranda, proposed jury instructions, and verdict slips.

Courts have granted preliminary approval of settlements that have occurred at much earlier stages. *See, e.g., Gates,* 248 F.R.D. at 444 (granting preliminary approval of settlement reached before discovery on the merits); *Thomas*, 2002 WL 1773035, at *5 (granting preliminary approval of settlement where there was "no reference to any formal discovery"). The advanced stage of this litigation thus also supports preliminary approval of the settlement. *See Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir. 1999) (finding that post-discovery settlements are more likely to reflect the true value of the case and be fair).

**D.** **The parties are experienced in similar litigation.**

The negotiations were conducted for Plaintiffs by counsel with extensive experience in litigating antitrust lawsuits, class actions, and other complex cases. Lead counsel and co-counsel for the class know how to pursue a case of this type and, after almost seven years of litigation,

were intimately familiar with the strengths and weaknesses of this case in particular.  The

extensive experience of class counsel in litigating similar cases, while not dispositive, suggests a

fair settlement.  *Fisher Bros. v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446, 452 (E.D. Pa. 1985)

("[T]he professional judgment of counsel involved in the litigation is entitled to significant

weight.").

Counsel for the class firmly believe that the proposed settlement is fair, reasonable, and

adequate, and should be approved.  Courts in other cases have found it appropriate to consider

strongly the recommendations of experienced counsel who have negotiated arm's-length

settlements.  *See, e.g., Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994)

(giving "due regard to the recommendations of the experienced counsel . . . who have negotiated

this settlement at arms-length and in good faith"); *Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D.

Pa. 1997) ("A presumption of correctness is said to attach to a class settlement reached in arms-

length negotiations between experienced, capable counsel after meaningful discovery.")

(citation, internal quotation omitted).

## II.     **The Proposed Form and Manner of Notice and Schedule are Reasonable.**

Under Rule 23(e), class members are entitled to reasonable notice of a proposed

settlement before it is finally approved by the Court, as well as of the final fairness hearing and

the opportunity to present their views.  *Manual* §§ 21.312, 21.633.  "[T]he Rule 23(e)

requirement is designed to summarize the litigation and the settlement and to apprise class

members of the right and opportunity to inspect the complete settlement documents, papers, and

pleadings filed in the litigation."  *Gates*, 248 F.R.D. at 445 (citations, internal quotation marks

omitted).

"[T]o satisfy due process, notice to class members must be reasonably calculated under

all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000) (citations, internal quotations omitted).

Generally, settlement notices should be provided to the class in the same manner as class certification notices,[4] including the requirement that individual notice be provided where practicable. *Manual,* § 21.312; *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003) ("The due process requirements of Federal Rule of Civil Procedure 23 demand that, prior to final approval of a class action settlement, class members be given the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts."); *Ikon Office Solutions*, 194 F.R.D. at 175 ("In 23(b)(3) actions, class members must receive the best notice practicable under the circumstances, including individual notice to all . . . [class members] who can be identified through reasonable effort.") (citations, internal quotations omitted); *Thomas*, 2002 WL 1773035, at *7 ("The requirement that individual notice be sent to all class members whose names and addresses may be ascertained with reasonable effort is mandatory.").

The notice provided under the settlement meets all such requirements.

### A.    Plaintiffs propose providing three forms of notice.

The proposed order provides for three forms of notice designed to reach class members. First, and most importantly, notice will be sent individually to all class members by first class mail. *See* Exhibit 2. Because notice of class certification was previously provided to the class, Plaintiffs already have class members' names and addresses and do not anticipate any problems in reaching them directly by mail. This satisfies the mandate of the *Manual* and case law

---

[4] Class members were previously notified, consistent with the requirements of Fed. R. Civ. P. 23(c)(2)(B), of the Court's order certifying the class.

referenced above that individual notice be provided whenever possible.

In addition, a summary notice will be published at two different times in the *Pink Sheet*, a pharmaceutical industry trade publication of wide circulation.  *See* Exhibit 3.

Finally, notice will be posted online (at www.WellbutrinDirectPurchaserSettlement.com).

Absent class members therefore will receive adequate notice of the settlement.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 527 (D.N.J. 1997), *aff'd,* 148 F.3d 283, 311 (3d Cir. 1998) (notice is sufficient where it informs class members of the nature of the litigation, the general terms of the settlement, where complete information can be located, the time and place of the final fairness hearing, and the opportunity for objectors to be heard); *see also Nichols v. SmithKline Beecham Corp.*, Civ. A. 00-6222, 2005 WL 950616, at *9 (E.D. Pa. Apr. 22, 2005) (same as *Prudential*).

The Third Circuit has routinely approved similar means of disseminating notice.  *See, e.g., In re Prudential*, 148 F.3d at 328  (holding that the parties had fully satisfied the notice requirements of Rule 23 where both individual and publication notice were provided); *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause.").[5]

### B.      The proposed notice plan assures that class members will receive adequate notice of the settlement.

The proposed notice plan meets all legal requirements, and the notice itself provides a

---

[5]  Recently, some courts presiding over direct purchaser pharmaceutical antitrust class actions have ordered notice to be disseminated to the class by first class mail only, without publication.  *See, e.g., Louisiana Wholesale Drug Co., Inc. v. Sanofi-Aventis US LLC*, No. 07-7343, at 7 (S.D.N.Y. Apr. 24, 2008) (attached as Exhibit 4); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-1317, at 3 (S.D. Fla. Feb. 25, 2005) (attached as Exhibit 5).

comprehensive explanation of the settlement in layperson's terms.  The proposed notice materials are based on samples promulgated by the Federal Judicial Center.[6]  They explain the case in "clear, concise, easily understood language,"[7] and fairly apprise class members of the settlement's terms and their options in connection with the proceedings, including the opportunity to attend and participate in the final fairness hearing.  The materials are also neutral and convey no opinion of the Court about the settlement.

C.     **It would be appropriate to approve the claim form, plan of distribution, and escrow agent and authorize the class administrator to disseminate notice of the settlement and receive and process class member claims.**

GSK has agreed to make a payment of $49 million into an escrow account within 30 calendar days of GSK's receipt of the Court's order preliminarily approving the settlement.  An escrow account has been established with Citizens Bank, which has experience managing similar accounts resulting from class action settlements and was selected by Lead Counsel with GSK's consent, and which Plaintiffs request that the Court approve as the escrow agent.  That $49 million payment constitutes the Settlement Fund, from which any taxes, court-awarded counsel fees, expenses, and payments to the two class representatives will be deducted, with the remaining amount constituting the Net Settlement Fund for distribution to the class.

GSK has also agreed to pay up to $500,000 towards the costs of notice and settlement administration, with payments to be made in accordance with approval from the Court.

Attached as Exhibit 6 is a claim form, which Plaintiffs propose each class member seeking to participate in the settlement should be required to complete and submit to the claims

---

[6] *See* www.fjc.gov.

[7] *See* Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 5 (Federal Judicial Center 2010), available at: http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

administrator, at the address specified in the class notice, postmarked no later than the deadline set forth on the claim form.

Plaintiffs request that the Court authorize CAA, which was previously appointed by the Court as class administrator, to disseminate notice of the settlement and receive and process class member claims, subject to the supervision of counsel for the class.  In addition to its earlier appointment in the present case, CAA has experience in many other class actions, including other similar antitrust cases.  *See, e.g., Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, Civ.A. 03-4578 (E.D. Pa.) (a pharmaceutical antitrust class action involving the prescription anti-depressant Paxil over which the Honorable John R. Padova presided); *Ryan-House v. GlaxoSmithKline plc,* C.A. 2:02cv442 (E.D.Va.) (a pharmaceutical antitrust class action involving the prescription medication Augmentin).[8]

All claims recommendations will be submitted to the Court for its approval.  Once a determination has been made as to which claimants are eligible to participate in the settlement, the Net Settlement Fund will be divided *pro rata* among all class members whose claims are approved, based on their purchases of Wellbutrin SR.

###    D.      The proposed schedule is reasonable.

Preliminary approval includes setting the deadlines for providing notice to the class, objecting to the settlement, submitting papers related to final approval and an award of attorneys' fees and costs, and submitting claims, as well as the date for the final fairness hearing.  That hearing will provide a forum for proponents and opponents (if any) of the settlement to address its terms, including its fairness, adequacy, and reasonableness, as well as the motion for attorneys' fees and costs.

---

[8]  Additional information about CAA may be found on the firm's website, http://www.classactionadmin.com.

Plaintiffs propose, and seek the Court's approval of, the following schedule for these

events:

|   | Event | Timing |
|---|-------|--------|
| 1 | Motion for preliminary approval filed | August 17, 2011 |
| 2 | Notice and claim form to be mailed and posted on WellbutrinDirectPurchaserSettlement.com | On or about 21 calendar days after entry of an order granting preliminary approval |
| 4 | Summary notice to be published on two occasions in the *Pink Sheet* | Approximately 28 and 35 calendar days after entry of an order granting preliminary approval |
| 5 | Deadline for filing motions for final approval and for attorneys' fees and reimbursement of expenses | 45 calendar days after entry of an order granting preliminary approval |
| 6 | Postmark deadline for objections and notices of intent to appear at final fairness hearing | 65 calendar days after entry of an order granting preliminary approval |
| 7 | Deadline for responding to any objections | 80 calendar days after entry of an order granting preliminary approval |
| 8 | Final fairness hearing | _____, 2011, at __:__ _.m., (on or about 90 calendar days from the entry of the preliminary approval order) |
| 9 | Postmark deadline for filing claims | 120 calendar days after order granting preliminary approval |

Because class members already have been given the opportunity to opt out of the class,

there is no need for an additional opt-out period, and none therefore has been included in the

schedule proposed above.  *See Auto. Refinishing Paint,* 2004 WL 1068807, at *3 (holding, in an

antitrust case, that a second opt-out period was unnecessary where class members had already been given the opportunity to opt out prior to approval of the settlement).

The decision to provide a second opt-out period is discretionary. *See id.*; Fed. R. Civ. P. 23(e)(4); Advisory Committee Notes to 2003 Amendments to Rule 23(e)(3) (which is now Rule 23(e)(4)); *Pierce v. Novastar Mortgage, Inc.*, C05-5835RJB, 2007 WL 1847216, at *3 (W.D. Wash. June 27, 2007). Courts are not required to provide one. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) (holding that the district court did not abuse its discretion in not providing a second opt-out period); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010) ("It is not necessary to provide the class members with an opportunity to opt out of the Settlement."); *In re Lloyd's Am. Trust Fund Litig.*, 96 CIV.1262 RWS, 2002 WL 31663577, at *12 (S.D.N.Y. Nov. 26, 2002) (observing that "due process does not afford Class Members a second opportunity to opt out" and noting, in that case, that "the integrity of the Class as constituted was an essential element to the Settlement."). *See also* Exhibit 7, *In re OSB Antitrust Litig.*, No. 06-826 (E.D. Pa. Aug. 7, 2008); Exhibit 8, *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340 (D. Del. Jan. 8, 2009); Exhibit 9, *In re MCC Antitrust Litig.*, No. 01-0111 (E.D. Pa. Sept. 7, 2006); Exhibit 10, *Meijer, Inc. v. Abbott Labs.*, No. C07-5985CW (N.D. Cal. Apr. 20, 2011); Exhibit 11, *Meijer, Inc. v. Barr Pharms., Inc.*, No. 05-2195 (D.D.C. Dec. 18, 2006); Exhibit 12 *In re Carbon Black Antitrust Litig*, No. 03-10191 (D. Mass. Nov. 29, 2006).[9]

Here, a deadline was set in connection with the initial opt-out period, and no class member chose to opt out. This is significant, because most—if not all—class members are

---

[9] *Accord Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007).

sophisticated businesses, such as wholesalers, distributors, and retailers of pharmaceutical products.

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant preliminary approval of this proposed settlement.  The settlement falls well within the range of possible approval, there are no grounds to doubt its fairness, and it was negotiated at arm's length by experienced counsel who support it. The form of notice, plan for dissemination of notice to the class, claim form, proposed plan of distribution, and escrow agent each warrant approval, and it would be appropriate to authorize the Court-appointed class administrator, CAA, to disseminate notice and receive and process class member claims.  Finally, it would be appropriate to establish a schedule for completing the settlement approval process, including the final fairness hearing.

Dated:  August 17, 2011                    Respectfully submitted,

                                           */s/ Joseph F. Roda*
                                           Joseph F. Roda

                                           */s/ Dianne M. Nast*
                                           Dianne M. Nast

                                           Jennifer S. Snyder
                                           RODANAST, PC
                                           801 Estelle Drive
                                           Lancaster, Pennsylvania 17601
                                           (717) 892-3000

                                           *Lead Counsel for Direct Purchaser*
                                           *Class Plaintiffs*

Michael L. Roberts
ROBERTS LAW FIRM, PA
P.O. Box 241790
20 Rahling Circle
Little Rock, Arkansas 72223
(501) 821-5575


Arnold Levin
Fredrick S. Longer
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
(215) 592-1500

J. Douglas Richards
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street
14th Floor
New York, NY 10005
(212) 838-7797


Paul E. Slater
SPERLING & SLATER, PC
55 W. Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 641-3200

Daniel E. Gustafson
Karla M. Gluek
GUSTAFSON GLUEK PLLC
650 Northstar East,
608 2nd Avenue S.
Minneapolis, MN 55402
(612) 333-8844


Linda P. Nussbaum
Shelly Friedland
John D. Radice
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
(646) 722-8500


Daniel Berger
Eric L. Cramer
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
(215) 875-3026


Joseph M. Vanek
VANEK, VICKERS, & MASINI P.C.
111 S. Wacker, Suite 4050
Chicago, Illinois 60606
(312) 224-1500


*Co-Counsel for Direct Purchaser Class Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Motion for Preliminary Approval of Direct Purchaser Class Settlement and supporting memorandum were served via ECF upon all counsel of record on this 17th day of August, 2011.

<u>*/s/ Joseph F. Roda*</u>
Joseph F. Roda
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
Telephone:  (717) 892-3000
Facsimile:  (717) 892-1200